UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America *ex rel.* Jeffrey Berkowitz, and Jeffrey Berkowitz individually, | ) ) ) ) | No. 13 C 08185 |
| Plaintiffs, v. | ) ) ) ) | Judge Edmond E. Chang |
| Automation Aids; A&E Office and Industrial Supply; Support of Microcomputers Associated; Aprisa Technology LLC; Supply Saver Corporation; United Office Solutions, Inc.; Vee Model Management Consulting; Caprice Electronics, Inc.; and Computech Data Systems, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Relator Jeffrey Berkowitz brought a *qui tam* action on behalf of the United States, alleging violations of the False Claims Act, 31 U.S.C. §§ 3729-33, *et seq.*[1] R. 22, Third Am. Compl.[2] Berkowitz, president of a company that sells office supplies to government agencies, alleged that some of his company's competitors (among them Aprisa) made false statements about products they were selling to the General Services Administration. *Id.* ¶¶ 1, 9-10, 14, 21, 25. Berkowitz contends that Aprisa certified that its products were compliant with all relevant federal vendor

---

[1]This Court has jurisdiction over Berkowitz's claims under 31 U.S.C. § 3732, which confers jurisdiction over actions brought under 31 U.S.C. §§ 3729 and 3730. Federal-question jurisdiction also applies. 28 U.S.C. § 1331.

[2]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

regulations, when in reality some of the products violated "country of origin" restrictions. *Id.* ¶¶ 2, 7-9, 14. Aprisa now moves to dismiss Berkowitz's claim, for failure to state a claim, Fed. R. Civ. P. 12(b)(6) and 9(b). R. 203, Mot. to Dismiss. For the reasons stated below, Aprisa's motion is granted.

**I. Background**

For purposes of this motion, the Court accepts as true the allegations in the Third Amended Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The background of this case has previously been laid out in detail in an earlier Opinion. *United States ex rel. Berkowitz v. Automation Aids*, 2017 WL 1036575, at *2-3 (N.D. Ill. Mar. 16, 2017).[3]

In brief, Aprisa is a vendor selling products to the federal government's General Services Administration (GSA). Third Am. Compl. ¶ 2. A vendor's contracts with the GSA must ultimately abide by the Trade Agreements Act of 1979 (TAA), 19 U.S.C. § 2501 *et seq.*, and that Act only allows vendors to offer goods either made in the United States or from a list of "designated" countries. *Berkowitz*, 2017 WL 1036575, at *2.[4]

Berkowitz alleges that, in violation of the Act and its corresponding regulations, Aprisa was selling items to the GSA that were not from either the United States or a designated country.[5] Third Am. Compl. ¶¶ 10, 98. Berkowitz says

---

[3]On this case's docket, the Opinion is R. 200, 03/16/17 Opinion and Order.
[4]Designated countries for the purposes of selling to the GSA are listed in the Federal Acquisition Regulations (FAR) at 52.225-5(a).
[5]Although there are some exceptions to the bar on GSA buying products coming from non-designated countries, Berkowitz contends that none of those exceptions applies to Aprisa, and Aprisa has not argued otherwise on this point. Third Am. Compl. ¶¶ 8, 78-95.

2

he figured this out by comparing product lists that he had received in the ordinary course of business with data on products sold to the government by other vendors.[6] *Id.* ¶ 99. He then made his own reports, fusing the country-of-origin data from the product lists with the vendor sales data. *Id.* ¶ 101.

Berkowitz alleges that Aprisa violated the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, by "making material false statements and presenting false claims to the United States." Third. Am. Compl. ¶¶ 12, 14. According to Berkowitz, Aprisa "certified … products [from undesignated countries] as having been manufactured in designated countries." *Id.* ¶ 11. Berkowitz attempts to build his claim on a set of inferences. Every contract between the government and a vendor should incorporate a Trade Agreements Certificate. *Id.* ¶¶ 52-55. On that certificate, the vendor must either (i) affirm that the listed products meet the United States or designated-

---

Government contract officers are allowed to purchase some "open market" items (items not bound by the country-of-origin requirements) in some situations: (1) for "micro-purchases" of less than a few thousand dollars, FAR 8.405-1(b); FAR 2.101 (defining "micro-purchase"); (2) when a product is unavailable within the usual market and competition between vendors can be established in order to award the low offer, FAR 25.502(b)(3); or (3) in the case of large "open market" purchases ($150,000 and above), if a formal "Request for Quotation" is publicized allowing all vendors to bid, FAR 8.405-2(c). *See also* Third Am. Compl. ¶¶ 78-95. There is also a threshold (currently around $200,000) that must be triggered for the TAA to kick-in on products covered under the World Trade Organization Government Procurement Agreement. *Id.* ¶¶ 50-51. For more on the relationship between the Procurement Agreement and the GSA vending regulations see *Berkowitz,* 2017 WL 1036575, at *2. Berkowitz contends that the "[Trade Agreement Act] threshold was always met, and the TAA applied to [Aprisa and the other original Defendants] at all times." Third Am. Compl. ¶ 51.

[6]Berkowitz is President of Complete Packing and Shipping Supplies, Inc. in Freeport, New York, which sells to the GSA, among other things, office, packaging, and shipping supplies,; information technology products; and janitorial supplies. Third Am. Compl. ¶¶ 21, 96-97. Berkowitz asserts that he meets the conditions to be an "original source" under 31 U.S.C. § 3730(e)(4), as he has independent knowledge of Aprisa's violations that did not come from any previous public disclosure. Third Am. Compl. ¶¶ 16-17.

3

country manufacturing requirement, or (ii) provide, in a separate subsection, a list of products that do not meet the requirement. *Id.* ¶ 54. Berkowitz goes on to argue that Aprisa must not have identified non-compliant products' true origins on their relevant Trade Agreements Certificates before selling them to the government, because if it had done so, then according to the Federal Acquisition Regulations, either the government would have rejected the entire offer or the offer would have been subjected to an analysis under one of the narrow "open market" exceptions. *Id.* ¶¶ 71-74. Because neither of these outcomes ostensibly happened, says Berkowitz, Aprisa must not have been truthful in its representations to the GSA. As a result, it is allegedly liable under the False Claims Act. *Id.* ¶ 72.

In exhibits attached to the Third Amended Complaint, Berkowitz lists each alleged non-compliant product category sold by Aprisa. *See* Third Am. Compl., Exhs. K, S.[7] The summed-up values are presented in the body of the complaint. Aprisa allegedly sold 18,431 non-compliant products worth $537,622 from April 2010 to June 2013, and an undisclosed additional amount between August 23, 2007 and December 30, 2014. *Id.* ¶ 120. In addition, Berkowitz offers four exhibits detailing communications from the GSA regarding vendor requirements and reminders that presumably would have gone to Aprisa. *Id.*, Exhs. A-D.[8] Berkowitz also includes a

---

[7]Exhibit K is a "Sales Data" spreadsheet, with columns for "Contractor," "Agency," "Sale Date," "Part Number," "Manufacturer," "Quantity," and "Amount." Exhibit S lists Aprisa's alleged open market violations, with columns for "Invoice Number" and "Value of Sole-Sourced [Non-Designated-Country] Products." For more on the "Open Market Violations" allegation, see Third Am. Compl. ¶¶ 141-146, 150.

[8]These exhibits include: "a GSA Training Manual entitled 'GSA Schedule vs. Open Market'" (Exh. A); a "GSA memo dated September 17, 2015 entitled 'Multiple Award Schedule 23V Ordering Instructions'" (Exh. B); a "GSA PowerPoint Presentation entitled

4

notification email from the GSA to an Aprisa representative dated September 14, 2012, informing the company that a listed product "appear[s] to be noncompliant," *id.,* Exh. L at 3, and an internal Aprisa email directing an employee to follow up on the matter: "CHECK IF WE HAVE ON CONTRACT IF SO REMOVE IT," *id.*, Exh. L at 1.

Aside from Aprisa, Berkowitz also sued several other defendants: Automation Aids, A&E Office and Industrial Supply, Support of Microcomputers Associated, Supply Saver Corporation, United Office Solutions, Inc., Vee Model Management Consulting, Caprice Electronics, Inc., and Computech Data Systems. In a prior Opinion, the Court dismissed those defendants from the case, because the allegations did not adequately state a claim against them. 03/16/17 Opinion and Order. Each of those defendants argued that Berkowitz had failed to plead fraud with requisite particularity under Federal Rule of Civil Procedure 9(b) and this Court agreed. *Berkowitz*, 2017 WL 1036575, at *5-9. Aprisa originally moved to dismiss only on Rule 12(b)(1) jurisdictional grounds, arguing that a different suit, filed in the United States District Court for the District of Columbia, beat relator to the punch. *See* R. 132, Aprisa 12(b)(1) Mot. to Dismiss. That motion was denied. *Berkowitz*, 2017 WL 1036575, at *9-11.[9] Aprisa then filed an unopposed motion for leave to file a Rule 12(b)(6) dismissal motion, R. 201, Mot. for Leave to File Mot. to Dismiss, and permission was granted. R. 206, Minute Entry (04/03/17). Now Aprisa

---

'An Advanced Overview of Multiple Awards Schedule Contracts'" (Exh. C); and a "GSA PowerPoint Presentation entitled 'Ensuring an Exceptional Multiple Award Schedule Report Card.'"

[9]Aprisa also filed a motion to join, *en masse*, any other Defendant's Rule 9(b) motion. R. 134, Aprisa Mot. to Join. That motion was denied. R. 138, Minute Entry (06/22/16).

moves to dismiss Berkowitz's suit for failure to state a claim, primarily relying on the prior Opinion. Mot. to Dismiss; R. 205, Def.'s. Br. at 1.

## II. Standard of Review

A Rule 12(b)(6) motion tests the sufficiency of the complaint, *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When reviewing a motion to dismiss under 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Under Federal Rule of Civil Procedure 8(a)(2), any complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). These allegations "must be enough to raise a right to relief above the speculative level," *id.*, and must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). While factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Iqbal*, 556 U.S. at 678-79.

Ordinarily, under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Claims alleging fraud, however, must in addition satisfy the heightened pleading requirements of Federal

6

Rule of Civil Procedure Rule 9(b): "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). Rule 9(b) thus requires complainants to go further than the usual claim; fraud claims should "state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (internal quotation marks omitted). In other words, fraud claims "ordinarily must describe the who, what, when, where, and how of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (internal quotation marks omitted).

### III. Analysis

Berkowitz brought four counts under the False Claims Act against Aprisa, alleging it made material false statements when certifying products for sale to the government. Third Am. Compl. ¶¶ 154-171. The False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, holds liable anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. §§ 3729(a)(1)(A)-(B). Because the False Claims Act was amended during the period of the alleged fraudulent activity,[10] Berkowitz

---

[10]A detailed explanation of these amendments can be found in *United States ex rel. Garbe v. Kmart Corp.*:
> Since 2009, the FCA has said that "any person who ... (1)(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or

7

broke his allegations down into four counts: (i) "knowingly submitt[ing], and caus[ing] to be submitted, false or fraudulent claims for payment and reimbursement" before May 20, 2009, Third Am. Compl. ¶¶ 154-157; (ii) "knowingly submitt[ing], and caus[ing] to be submitted, false or fraudulent claims for payment and reimbursement" after May 20, 2009, Third Am. Compl. ¶¶ 158-161; (iii) "knowingly ma[king], us[ing], or caus[ing] to be made or used, material false statements to obtain Federal Government payment for false or fraudulent claims" before June 7, 2008, Third Am. Compl. ¶¶ 162-166;[11] and (iv) "knowingly ma[king],

---

approval" or "(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" is liable under the False Claims Act. 31 U.S.C. § 3729(a)(1) (2009). But the section did not always read that way. Before the enactment of FERA, 31 U.S.C. § 3729, it provided for liability for "[a]ny person who ... (1) knowingly presents, or causes to be presented, *to an officer or employee of the United States Government or a member of the Armed Forces of the United States* a false or fraudulent claim for payment or approval;" or "(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim *paid or approved by the Government.*" *Id.* § 3729(a) (1994) (emphasis added).

The change occurred because of a Supreme Court decision. In 2008, the Court held that FCA § 3729(a)(1) requires a defendant's direct presentment of the false claim to an officer or employee of the government. *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 668 (2008). The Court further held that for liability under § 3729(a)(2) to attach, there had to be proof that the defendant had a specific intent to defraud the government. *Id.*

Congress responded the next year by enacting FERA. FERA excised the language requiring that the claim be presented "to an officer or employee of the United States Government or a member of the Armed Forces of the United States." It also struck from § 3729(a)(2) the words "to get a false or fraudulent claim paid or approved by the Government," which the Supreme Court had interpreted to require a specific intent to defraud the government. *See Allison Engine*, 553 U.S. at 668-69. The revised law imposed only the less onerous requirement that the "false record or statement" be "material to a false or fraudulent claim."

824 F.3d 632, 638 (7th Cir. 2016).

[11]The 2009 Fraud Enforcement and Recovery Act of 2009, amending 31 U.S.C. § 3729, specified in a note that subparagraph (B) 31 U.S.C. § 3729(a)(1) "shall take effect as if enacted on June 7, 2008, and apply to all claims under the False Claims Act (31 U.S.C. 3729 et seq.) that are pending on or after that date." Pub. L. No. 111-21, 123 Stat. 1617 (2009).

us[ing], or caus[ing] to be made or used, material false statements to obtain Federal Government payment for false or fraudulent claims" after June 7, 2008, Third Am. Compl. ¶¶ 167-171.[12] A "claim," for the purposes of the Act, is "any request or demand ... for money" that "is presented to an officer, employee, or agent of the United States." 31 U.S.C. § 3729 (b)(2)(A)(i). Berkowitz alleges (and it has not been disputed) that when Aprisa requested to be paid by the government for products tendered, Aprisa presented qualifying "claim[s]" covered by the Act. Third Am. Compl. ¶ 38.

Aprisa argues that Berkowitz's suit should fail at this stage because the allegations do not meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).[13] Aprisa relies on the prior Opinion this case, which dismissed relator's claims against all of the other Defendants due to insufficient particularity under Rule 9(b). Def.'s. Br. at 1. As discussed in detail in the prior Opinion, the allegations against Aprisa fail for the same reason: Berkowitz cannot hurdle the fraud-pleading bar. *Berkowitz*, 2017 WL 1036575, at *5-9.[14]

---

[12]The 2009 amendment also resulted in minor wording changes to the relevant subparagraph of the FCA statute, 31 U.S.C. §3729(a)(1)(B).

[13]Fed. R. Civ. P. 9 states that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

[14]To be sure, the prior Opinion noted that there was one additional allegation leveled against Aprisa that was asserted against only one of the other Defendants. *Berkowitz*, 2017 WL 1036575, at *11 n.15 ("Indeed, as it turns out (at least as far as Berkowitz was able to plead), Aprisa was one of only two Defendants that received a general notice from GSA about noncompliant products on its Electronic Catalog, which was the closest to specific that Berkowitz came in this fraud suit."). But the prior Opinion went on to explain: "Those notices were based on reviews of *catalogs*, not submitted claims, so once again Berkowitz asks too much of the allegations to reasonably infer fraud, rather than a breach of contract or a simple mistake. Indeed, the Aprisa exhibit to the Third Amended Complaint includes a quick-action email from one Aprisa employee to another, attaching the GSA email

9

Much of Berkowitz's argument on this motion is a rehashing of previous arguments. But for the sake of completeness, the Court addresses Berkowitz's arguments on the motion (some of which are repeats, while some are new). First, Berkowitz contends that setting forth "detailed transaction claims" is by itself enough to adequately plead a False Claims Act claim under Rule 9(b). R. 210, Pl.'s. Br. at 2. But the prior Opinion explained why, in the context of this case, just identifying the allegedly false claims themselves is insufficient.[15] A mere list of sales of products made in non-designated countries does not satisfy Rule 9(b), which requires more detail about the fraud scheme.[16]

---

notification (which had been received three minutes earlier) and giving the instruction, 'CHECK IF WE HAVE ON CONTRACT IF SO REMOVE IT.'" *Berkowitz*, 2017 WL 1036575, at *7 (emphasis in original).

[15]*Berkowitz*, 2017 WL 1036575, at *5, *7 ("A fraudulent claim should not be pled from a broad aerial view, but instead must allege that a defendant made a false claim 'at an individualized transaction level.' *United States ex rel. Wildhirt v. AARS Forever, Inc.*, 2011 WL 1303390, at *5 (N.D. Ill. Apr. 6, 2011) (citing *United States ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 741–42 (7th Cir. 2007), *overruled on other grounds by Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009)). And voluminous exhibits by themselves do not automatically satisfy Rule 9(b) and will not otherwise save a complaint that never arrives at specifics of the who, what, when, where, and how [of the fraud]. *See DiLeo*, 901 F.2d at 627; *Bragg*, 2012 WL 2072860, at *2; *Ceas*, 78 F. Supp. 3d at 882 (giving 37 examples of alleged fraudulent activity based solely on one type of report will not satisfy Rule 9(b) if that type of report is not particular enough for pleading purposes) …. Even if the products sold by the Defendants were made in non-designated countries, there are no particularized allegations on specifically *who* engaged in the fraud, and *what* they did to execute it." (emphasis in original)).

[16]*Berkowitz*, 2017 WL 1036575, at *5 ("The Seventh Circuit has consistently described what a plaintiff needs to do in order to satisfy Rule 9(b). Generally speaking, a suit alleging fraud should give 'the who, what, when, where, and how: the first paragraph of any newspaper story.' *E.g.*, *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Writing that first newspaper paragraph entails giving 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.' *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014) (internal quotation marks omitted); *see also United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 778-79 (7th Cir. 2016) (citing the same standards from *DiLeo* and *Grenadyor*); *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009); *United*

Next, Berkowitz cites cases as a point of comparison, arguing that the cases were dismissed "precisely because the relators failed to include transactional data that would demonstrate that false claims were actually submitted to the Government." Def.'s. Br. at 2. Specifically, he cites *United States ex. rel. Folliard v. Hewlett-Packard Co.*, 272 F.R.D. 31 (D.D.C. 2011), and *United States ex rel. Crennen v. Dell Mktg., L.P.*, 711 F. Supp. 2d. 157 (D. Mass. 2010).[17] It is true that both of those cases held that the respective complaints had not even plausibly pled that a false claim was ever actually submitted. But the fact that other plaintiffs have failed for a *different* reason than the relator in this case does not shed any light on

---

*States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 377-378 (7th Cir. 2003) (demanding evidence of specific statements rather than blanket allegations); *United States ex rel. Grant v. Thorek Hosp. & Med. Ctr.*, 2007 WL 2484333, at *2 (N.D. Ill. Aug. 29, 2007); *United States ex rel. Swift v. DeliverCareRx, Inc.*, 2015 WL 10521636, at *4 (N.D. Ill. Oct. 26, 2015); *United States ex rel. Bragg v. SCR Med. Transp., Inc.*, 2012 WL 2072860, at *1 (N.D. Ill. June 8, 2012); *United States ex rel. Ceas v. Chrysler Grp. LLC*, 78 F. Supp. 3d 869, 883 (N.D. Ill. 2015).").

[17]Berkowitz also cites *U.S. ex rel. Cox v. Smith & Nephew, Inc.*, 749 F. Supp. 2d. 773 (W.D. Tenn. 2010), as an example of a case where a court allowed some level of inference regarding the actual submission of a false claim to the government. Berkowitz argues that this case is an example of an opinion "reject[ing] [a] Rule 9(b) challenge[] to FCA/TAA allegations in spite of the fact that [the] complaint [did not] present[] any specific transactional/claims information." Pl.'s. Br. at 4. But it is not clear why Berkowitz is going down this path. The prior Opinion in Berkowitz's case did not cite problems with the inference of actual submission of claims for payment to the government. In fact, it said the opposite, as Berkowitz notes: "Generally speaking, it is possible to reasonably infer from these exhibits that the Defendants sold supplies made in non-designated countries to the government." *Id.* at 7 n.2 (citing 03/16/17 Opinion and Order). The complaint in *Cox* survived Rule 9(b) because the plaintiff there alleged plenty of other particulars—precisely the who, what, where, and when details about the fraudulent scheme that Berkowitz is lacking. *Cox* explained that the relator's allegations were "based on his first-hand knowledge as an executive" at the defendant-company; that he was "an executive … tasked by [defendant- company] with investigating falsely designated products and who allegedly had other executives admit to him that [defendant] was engaged in violations of federal procurement law." *Cox,* 749 F. Supp. 2d at 785. Indeed, the relator in *Cox* went many strides beyond Berkowitz in his pleading, giving details about an internal meeting "at which the attendees discussed various devices to conceal Smith & Nephew's sales of non-TAA compliant products to the government." *Id.* at 777.

11

whether the complaint here is sufficient. Plausibly pleading that a false claim was actually submitted is necessary but *not* sufficient in FCA cases; relators can still stumble if other aspects of the requisite particularity are not in the complaint.

Next, Berkowitz argues that neither the False Claims Act nor Rule 9(b) requires him to allege, by name, the specific Aprisa employee who committed the fraud. That is right—and the prior Opinion does not say otherwise. Berkowitz points to this part of the prior Opinion:

> Even if the products sold by the Defendants were made in non-designated countries, there are no particularized allegations on specifically *who* engaged in the fraud, and *what* they did to execute it. Most important of all, there are no specific allegations from which to reasonably infer that someone in each company *knew* that the company was selling non-compliant products to the government; that the same someone also *knew* that the Trade Agreements Act required that the products be made only in certain countries; and that the same someone *knew* that the submitted claims amounted to an implied certification that the goods were in compliance with all statutory and regulatory requirements, so the someone decided to omit the country of origin from the submitted claims. Without more specific allegations about the fraud schemes executed by each of the Defendants, really what is alleged is a breach of contract, not fraud.

*Berkowitz*, 2017 WL 1036575, at *7 (emphasis in original). That holding does not say Berkowitz must identify the wrongdoer by name. Instead, the prior Opinion describes what Rule 9(b) requires in the context of the specific type of claim asserted by Berkowitz. And as applied to the pending motion, the principle is the same: if at least one person at Aprisa did not simultaneously know about the company's noncompliance with the TAA and that it was submitting claims in such a way to hide or omit that noncompliance, then no fraud scheme has been pled. Of course, reasonable inferences must be considered in evaluating the sufficiency of the

pleading, *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009), but piling inference upon inference is not permitted, *see United States ex rel. Ceas v. Chrysler Grp. LLC*, 78 F. Supp. 3d 869, 882 (N.D. Ill. 2015) (complaint fails Rule 9(b) because "[p]laintiff continues to reverse-engineer his complaint by stacking additional inferences onto his core allegation").

Berkowitz next argues that the prior Opinion "introduce[d] a specific intent element" into the "pleading standard, notwithstanding the fact that under Rule 9(b), 'knowledge' in an FCA case may be pled generally." Pl.'s. Br. at 8. It is true that knowledge may be pled generally, Fed. R. Civ. P. 9(b), but *fraud* of course must be pled with particularity. And even as to knowledge, *facts*—not conclusions—must be pled from which it can be plausibly inferred that Aprisa knew that the products were non-compliant and knowingly sought payment despite the non-compliance.[18]

Berkowitz offers a few additional arguments on circumstantial evidence of knowledge: (a) Aprisa is a "middleman" and the GSA has given clear guidance regarding TAA compliance; (b) Aprisa had a profit motive; and (c) the quantities of non-compliant products suggests knowledge. Pl.'s Br. at 9-12. Again, the prior Opinion explained why Rule 9(b) requires more in the context of this specific case,

---

[18]Amendments to the FCA have not changed its status with regard to heightened pleading. Those bringing an FCA claim, including for activity after the date of amendment, must still satisfy Rule 9(b). *See Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 1996, 2004 n.6 (2016) ("Congress has repeatedly amended the [False Claims] Act, but its focus remains on those who present or directly induce the submission of false or fraudulent claims … False Claims Act plaintiffs must also plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b) by, for instance, pleading facts to support allegations of materiality."); *see also United States ex rel. Presser v. Acacia Mental Health Clinic, LLC et al.*, 836 F.3d 770 (7th Cir. 2016); *United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775 (7th Cir. 2016).

13

where Berkowitz is trying to assert claims based on *omissions* about the country of origin rather than affirmative lies. 2017 WL 1036575, at *7. And profit motive is a *minimum* requirement to plausibly infer a fraud, and does not otherwise fill the factual void in the complaint.[19]

Finally, Berkowitz filed supplemental authority on April 24, 2017, R. 215, Notice of Supp. Authority, citing to a district court decision handed down the previous week, *United States ex rel. Scutellaro v. Capitol Supply, Inc.*, 2017 WL 1422364 (D.D.C. Apr. 19, 2017). But *Scutellaro* actually is not relevant here. That case decided five motions, and none of them involved evaluating a fraud claim under Rule 9(b) at the dismissal motion stage. *See id.* at *2.[20]

---

[19]Berkowitz also reads too much into *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013 (7th Cir. 1999), contending that it "held that a financial motive can support the inference that defendant's actions were not innocent mistakes." Pl.'s Br. at 11. To the extent that it "holds" anything on this question, *Lamers* simply says that a court should *not* infer deception by a party without a motive. *Lamers*, 168 F.3d at 1019 ("To make such an inferential leap, *at a minimum* we would need some motive on the part of the City for the alleged deception. The City had no financial motive to violate the regulations because the types of violations alleged were not cost-saving." (emphasis added)).

[20]Also, as Aprisa points out in its response to the supplemental authority, even delving into the reasoning of *Scutellaro*, nothing in that case changes or "dilute[s] the pleading requirements for *scienter* of materiality" in a TAA-based FCA claim. R. 216, Def.'s Resp. to Supp. Authority at 2. So it is unclear how this would help Berkowitz.

14

## IV. Conclusion

For the reasons discussed, Aprisa's motion to dismiss is granted and the claims against Aprisa are dismissed with prejudice. Aprisa was the last remaining defendant, so final judgment shall be entered against Berkowitz and in favor of all Defendants. The status hearing of July 27, 2017 is vacated.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: July 12, 2017