CERTIFIED COPY

A True Copy
Teste:

_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit



# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 17-2562

UNITED STATES EX REL. JEFFREY BERKOWITZ,

            *Plaintiff-Appellant*,

*v.*

AUTOMATION AIDS, INC., *et al.*,

            *Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13-cv-08185 — **Edmond E. Chang**, *Judge*.

_____

ARGUED FEBRUARY 14, 2018 — DECIDED JULY 25, 2018

_____

Before EASTERBROOK and ROVNER, *Circuit Judges*, and GRIESBACH, *District Judge*.[*]

GRIESBACH, *District Judge*. Relator Jeffrey Berkowitz filed a *qui tam* complaint against nine separate defendants, alleging violations of the False Claims Act (FCA), 31 U.S.C.

---

[*] Of the Eastern District of Wisconsin, sitting by designation.

§ 3730. The defendants moved to dismiss Berkowitz' third amended complaint for failure to state a claim. The district court granted the defendants' motions and dismissed the case. We affirm.

## I. Background

Berkowitz is the president of Complete Packaging and Shipping Supplies, Inc., a company that holds a General Service Administration (GSA) multiple award schedule contract. Under the GSA schedule contract, Complete Packaging sells office supplies, packaging and shipping supplies, information technology products, and janitorial maintenance supplies to various government agencies and departments. The defendants—Automation Aids, Inc.; A&E Office and Industrial Supply; Support of Microcomputers Associated; Aprisa Technology LLC; Supply Saver Corporation; United Office Solutions, Inc.; Vee Model Management Consulting; Caprice Electronics, Inc.; and Computech Data Systems—also hold separate GSA schedule contracts and compete with Berkowitz' company. Vendors with GSA schedule contracts are responsible for complying with the requirements of the Trade Agreements Act (TAA), 19 U.S.C. § 501 *et seq.* As relevant to this case, GSA requires that a vendor only offer and sell U.S.-made or other designated country end products to governmental agencies in accordance with the TAA. The Federal Acquisition Regulations (FAR) catalogues the designated countries for the purposes of the TAA and defines "designated country end product" as a product made in a designated country. FAR 52.225-5. It also requires that a vendor's GSA agreement contain a "Trade Agreements Certificate," certifying that each end product sold through the GSA services contract is a U.S.-made or designated country end

product and explicitly listing the other end products that are not U.S.-made or designated country end products. FAR 52.225-6.

Once a vendor enters into a GSA schedule contract with the government, the vendor uploads its price list to the GSA Advantage online portal, GSA's online shopping and ordering system. From there, government employees may purchase millions of commercial products and services from the vendors.

According to Berkowitz, as early as 2005, he became aware that other vendors offered and sold products from non-designated countries, such as China or Thailand, to the government. He claims he came to this realization by comparing the sales other vendors made on the GSA Advantage online portal with certain product lists he obtained through the normal course of his business that identify the country of origin for various products. Berkowitz contends that while he carefully screens out the non-compliant products he places on the online portal, he realized many other vendors were not doing the same. As a result, he began compiling reports that compared non-TAA compliant products with sales made on GSA Advantage. He determined that the defendants sold end products that were from non-designated countries.

Berkowitz claims the defendants violated the FCA by making material false statements and presenting false claims to the United States. He alleges the defendants knowingly sold products from non-designated countries to the government even though they filed Trade Agreements Certificates, in accordance with FAR 52.225-6, affirming they would only sell products from designated countries. It therefore follows,

Berkowitz contends, that any invoices the defendants submitted to the government for payment for products that did not comply with the TAA constitute material false statements as defined by the FCA. Berkowitz recognizes there are limited exceptions to GSA's restriction on buying non-compliant products from vendors but asserts none of these exceptions apply to the defendants.

Berkowitz filed his complaint on November 14, 2013. On January 13, 2016, the government elected not to intervene in Berkowitz' case. Berkowitz subsequently amended his complaint multiple times and filed a third amended complaint, the subject of the instant appeal, on April 4, 2016. He attached as exhibits to the complaint lists describing the number of alleged non-compliant products the defendants sold as well as GSA notices advising certain defendants to remove non-compliant products from their product catalogs maintained on the GSA Advantage online portal.

All defendants, excluding Aprisa, moved to dismiss the complaint for failure to state a claim under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. Aprisa filed a motion to dismiss under Rule 12(b)(1) asserting the district court lacked subject matter jurisdiction over Berkowitz' claims against it. On March 16, 2017, the district court denied Aprisa's 12(b)(1) motion but granted the other defendants' Rule 12(b)(6) motions to dismiss and dismissed Berkowitz' claims against them with prejudice. Aprisa then filed a motion to dismiss under Rule 12(b)(6). The district court granted the motion on July 12, 2017 and dismissed Berkowitz' complaint with prejudice.

## II. Analysis

We review the district court's grant of a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure *de novo*. *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 382 (7th Cir. 2016). In construing the complaint, we accept all of the well-pleaded facts as true and "draw all reasonable inferences in favor of the plaintiff." *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a motion to dismiss, the complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, a claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Berkowitz' claims arise under the FCA, an antifraud statute, they are subject to the heightened pleading requirements of Rule 9(b). *United States ex rel. Gross v. AIDS Research Alliance—Chicago*, 415 F.3d 601, 604 (7th Cir. 2005). Under Rule 9(b), a plaintiff "alleging fraud or mistake … must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The plaintiff must describe the "who, what, when, where, and how" of the fraud—"the first paragraph of any newspaper story." *United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009) (internal quotation marks omitted). What constitutes "particularity," however, may depend on the facts of a given case. *See Pirelli Armstrong Tire Corp. Retiree Med. Bene-*

*fits Trust v. Walgreens Co.*, 631 F.3d 436, 442 (7th Cir. 2011) (citations omitted). Plaintiffs must "use some … means of injecting precision and some measure of substantiation into their allegations of fraud." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (quoting 2 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 9.03[1][b], at 9–22 (3d ed. 2015)). The heightened pleading requirement in fraud cases "forces the plaintiff to conduct a careful pretrial investigation" to minimize the risk of damage associated with a baseless claim. *Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 748–49 (7th Cir. 2005).

The FCA allows private persons, or relators, to prosecute *qui tam* actions "against alleged fraudsters on behalf of the United States government." *United States ex rel. Watson v. King–Vassel*, 728 F.3d 707, 711 (7th Cir. 2013); 31 U.S.C. § 3730. If the government does not intervene in the action, as is the case here, the relator may proceed with the case on his own, though still on behalf of the government. 31 U.S.C. § 3730(c)(3). If the action is successful, the relator is eligible to receive a percentage of the recovery. *Id.* § 3730(d)(1)–(2).

The fraudulent conduct alleged in Berkowitz' complaint appears to be governed by both the current FCA statute, which was amended in 2009 by the Fraud Enforcement Recovery Act, and the pre-amendment statute. Prior to the amendment, the FCA limited liability to an individual who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or state-

No. 17-2562 7

ment to get a false or fraudulent claim paid or approved by the government." 31 U.S.C. § 3729(a)(1)–(3) (2006). Under the current version of the statute, which applies only to claims pending on or after June 7, 2008, a person is liable under the FCA if he "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A)–(B). Both versions of the FCA define "knowledge" or "knowingly" to encompass the conduct of an individual who either has "actual knowledge of the information," "acts in deliberate ignorance of the truth or falsity of the information," or "acts in reckless disregard of the truth or falsity of the information." *Id.* § 3729(b)(1)(A).

Berkowitz asserts four counts under both versions of the statute based on when the defendants' alleged fraudulent activity occurred. To state an FCA claim under either version of the statute, Berkowitz must allege the following essential elements with particularity: "(1) the defendant made a statement in order to receive money from the government; (2) the statement was false; and (3) the defendant knew the statement was false." *Gross*, 415 F.3d at 604 (citing 31 U.S.C. § 3729(a)(2); *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999)).

Berkowitz concedes he cannot allege that the defendants made any express misrepresentations to the government. Instead, his claims are premised on an implied false certification theory. The Supreme Court recently recognized that this theory may be a basis for FCA liability when a defendant not only requests payment on a claim "but also makes specific representations about the goods or services provided" and

"the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2001 (2016). Though *Universal Health* clarified the circumstances under which a plaintiff may proceed on an implied false certification claim, its analysis does not change the fact that a plaintiff must sufficiently plead the essential elements of an FCA claim.

We must therefore consider whether the third amended complaint states, with sufficient particularity, the facts necessary to demonstrate that the defendants knowingly made false statements to receive payment from the government. Berkowitz alleges that the defendants knowingly or with gross disregard sold products from non-designated countries to the government and presented false claims for the payment for the sale of these items. Because the defendants did not properly or truthfully complete the Trade Agreements Certificate and offered and sold products from non-designated countries in the face of misrepresentations and omissions in their Trade Agreements Certificates, he continues, the defendants knowingly violated the FCA when they submitted a claim to the government for payment and impliedly certified that the products were compliant with TAA regulations. The government then paid for the non-compliant products and sustained damages because of the defendants' actions. If the defendants had properly identified the non-compliant products prior to their sale, the entire offer would have been rejected or subject to a non-availability analysis.

Though Berkowitz alleges the defendants defrauded the government by knowingly submitting false statements for payment, the third amended complaint does not contain the underlying details of the fraud scheme. What the complaint fails to allege are any specific facts demonstrating what occurred at the individualized transactional level for each defendant. Berkowitz contends that the Rule 9(b) standard should be relaxed in this context because, as one of the defendants' competitors, he does not have access to the detailed information that would substantiate his claims. Indeed, this court has recognized that a party may make allegations on information and belief in the fraud context when "(1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides the grounds for his suspicions." *Pirelli*, 631 F.3d at 442 (citing *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992)). Even under this standard, however, the relator must still describe the predicate acts with some specificity to inject "precision and some measure of substantiation" into his allegations of fraud. *Presser*, 836 F.3d at 776 (citation omitted); *see also Pirelli*, 631 F.3d at 443 ("The grounds for the plaintiff's suspicions must make the allegations *plausible*, even as courts remain sensitive to information asymmetries that may prevent a plaintiff from offering more detail."). Berkowitz has not done so here.

Berkowitz alleges that he compiled reports showing the defendants sold thousands of non-compliant products over a three-year period. He does not, however, describe the nature of the product lists he used to assist in the compilation of the reports, indicate how these lists relate to the defendants' actual sales, or say what particular information any sales orders submitted by the defendants contained. The fact that

the defendants may have sold non-compliant products during a certain time period in violation of the TAA does not equate to the defendants making a knowingly false statement in order to receive money from the government.

In *Universal Health*, the Court suggested that "concerns about fair notice and open-ended liability [in FCA cases based on an implied false certification theory should] be 'effectively addressed through strict enforcement of the Act's materiality and scienter requirements.'" 136 S. Ct. at 2002 (quoting *United States v. Science Applications Int'l Corp.*, 626 F.3d 1257, 1270 (D.C. Cir. 2010)). That is what the district court did here. At most, Berkowitz' allegations amount to claims that the defendants made mistakes or were negligent. This alone is insufficient to infer fraud under the FCA. *United States ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 742 (7th Cir. 2007), *overruled on other grounds by Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009) (noting that "'innocent' mistakes or negligence are not actionable" under FCA (citations omitted)). The FCA is not "'an all-purpose antifraud statute' … or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Universal Health*, 136 S. Ct. at 2003; *see also United States ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 832 (7th Cir. 2011) (The FCA "does not penalize all factually inaccurate statements, but only those statements made with knowledge of their falsity."). This court has recognized that a violation of a regulation "is not synonymous with filing a false claim." *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1107 (7th Cir. 2014). If this were the standard, every allegedly inaccurate claim would transform "into a false claim and consequently replace the Act's knowledge requirement with a strict liability standard." *Fowler*, 496 F.3d at

743; *see also United States ex rel. Main v. Oakland City Univ.*, 426 F.3d 914, 917 (7th Cir. 2005) ("[F]raud requires more than breach of promise: fraud entails making a false representation, such as a statement that the speaker will do something it plans not to do. Tripping up on a regulatory complexity does not entail a knowingly false representation."). Without any specific allegations regarding the particularities of the fraud scheme, Berkowitz cannot satisfy the requirements of Rule 9(b) for these claims.

Even if he did not sufficiently plead that the defendants had actual knowledge of the false information, Berkowitz maintains that he has alleged that the defendants acted with reckless disregard of the truth or falsity of the information. This court has recognized that "a person acts with reckless disregard 'when the actor knows or has reason to know of facts that would lead a reasonable person to realize' that harm is the likely result of the relevant act." *Watson*, 728 F.3d at 713 (quoting BLACK'S LAW DICTIONARY 540–41 (9th ed. 2009)). In other words, Berkowitz is only required to allege that the defendants "had reason to know of facts that would lead a reasonable person to realize that [the defendants] were] causing the submission of a false claim … or that [the defendants] failed to make a reasonable and prudent inquiry into that possibility." *Id.*

To establish that the defendants acted with reckless disregard, Berkowitz relies on GSA notices directing certain defendants to remove non-compliant products from their GSA Advantage online portal product inventories. But these notices were sent to some, not all, of the defendants. In addition, Berkowitz does not allege that, after being instructed to remove non-compliant products from their lists, the defend-

ants who received the notices subsequently submitted claims for payment for these products anyway or that any of the defendants received non-compliant warnings regarding actual product sales. It also seems worth noting that the fact that the government has allegedly paid millions of dollars for the non-compliant products suggests that Berkowitz cannot satisfy the materiality prong of the implied certification theory. *See Universal Health*, 136 S. Ct. at 2002–03 (It is not enough to demonstrate that "the Government would have the option to decline to pay if it knew of the defendant's noncompliance. … [M]ateriality looks to the effect on the *likely* or *actual* behavior of the recipient of the alleged misrepresentation."). Setting materiality aside, however, Berkowitz has not alleged that the defendants acted with reckless disregard of the truth or falsity of the information they provided to the government. Simply put, Berkowitz has failed to plead the elements of an FCA claim with particularity.

We acknowledge that it is difficult for a relator to allege with accuracy what occurs inside a competitor's operations. But this difficulty does not relieve Berkowitz of his obligation to adequately plead all of the elements of an FCA claim or to fully investigate his claim before filing a complaint. *See Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) ("The purpose … of the heightened pleading requirement in fraud cases is to force the plaintiff to do more than the usual investigation before filing his complaint.").

One final point warrants comment. Berkowitz hints in his reply brief that he offered to cure any perceived pleading deficiencies through the filing of an amended complaint, but the district court denied his request for leave to amend and

dismissed the complaint with prejudice. Arguments raised for the first time in an appellate reply brief are waived. *Hess v. Reg–Ellen Mach. Tool Corp.*, 423 F.3d 653, 665 (7th Cir. 2005). Even reaching the merits, Berkowitz has not established that the district court erred in denying him leave to file a fourth amended complaint. "We review a district court's denial of leave to amend for abuse of discretion and reverse only if no reasonable person could agree with that decision." *Huon v. Denton*, 841 F.3d 733, 745 (7th Cir. 2016) (quoting *Schor v. City of Chicago*, 576 F.3d 775, 780 (7th Cir. 2009)). The district court explained in denying his request to amend that Berkowitz did not actually specify what the additional allegations might be and that he had ample opportunity to cure the deficiencies in his complaint through his previous amendments. In short, the district court did not err in denying leave to amend.

For the above reasons, the decision of the district court is AFIRMED.